IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>Plaintiff, )<br>) CIVIL NO:<br>v. )<br>)<br>JUXTOPIA, LLC AND JAYFUS T. )<br>DOSWELL, )<br>)<br>Defendants. ) | |

COMPLAINT

1.  The United States of America brings this action on behalf of the National Science Foundation ("NSF"), an agency of the United States, seeking recovery of money wrongfully paid to, and for civil penalties against, Defendants, Juxtopia LLC and Jayfus Doswell (collectively, "Defendants"), under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, and for Unjust Enrichment, Payment by Mistake, and Common Law Fraud, based upon misrepresentations made to NSF to obtain a Small Business Technology Transfer (STTR) Program Phase II grant and subsequent supplemental payments pursuant to the grant, and alleges as follows:

JURISDICTION AND VENUE

2.  The jurisdiction of this Court exists pursuant to 28 U.S.C. §§ 1345 and 1355, and 31 U.S.C. § 3730.

3.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a).

## PARTIES

4. The United States is the plaintiff in this action on behalf of NSF. NSF, located in Arlington, Virginia during the pertinent period, is an independent federal agency, and its activities, operations, contracts and grants are paid from federal funds. The mission of NSF is to fund research and education in science and engineering disciplines while supporting programs to strengthen scientific and engineering research potential. At all times relevant to this Complaint, NSF granted awards pursuant to the STTR Program.

5. Defendant Juxtopia, LLC ("Juxtopia") is a biomedical and information technology business located in Baltimore, Maryland.

6. Defendant Jayfus T. Doswell ("Doswell") is an individual residing in Baltimore, Maryland, and at all times relevant to this Complaint, Doswell served as Chief Executive Officer ("CEO") and President of Juxtopia.

## THE FALSE CLAIMS ACT

7. The False Claims Act provides, in pertinent part, that any person who:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a). For purposes of the False Claims Act,

(1) the terms "knowing" and "knowingly"

(A) mean that a person, with respect to information – (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information; and

(B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b).

## THE SBIR/STTR PROGRAM

8.  The Small Business Innovation Research Award (SBIR) and STTR Program stimulates technological innovation by strengthening the role of small businesses in meeting federal research and development needs. Small businesses that win these awards are entitled to keep the rights to any technology developed. See Article 8 of the SBIR Phase II Grant General Conditions (October 2004).

9.  STTR awards from NSF occur in two phases. Phase I consists of a feasibility study, with a potential award of up to $100,000 during the pertinent period. Phase II consists of commercialization of a product or process, with a potential award of up to $500,000 during the pertinent period.

10. The amount awarded by NSF is based upon the amounts, by category, included in the award budget, which in turn, are based upon the information provided by the small business in the proposal and award negotiation process. The conditions of the awards permit NSF to renegotiate the amount of an award after it is granted if the total project expenditures are significantly less than the original award budget. See Article 1 of the SBIR Phase II Grant General Conditions (October 2004).

### Pre-Award Financial Review

11. As a condition of making Phase II STTR awards, NSF requires award applicants to undergo a pre-award financial review, in which the agency seeks to determine whether the applicant can efficiently and effectively manage the monetary award. See http://www.nsf.gov/bfa/dias/caar/sbirrev.jsp. NSF will decline funding when an organization is

unable to demonstrate that it has sufficient financial resources as of the evaluation date, or if in NSF's opinion, there is a risk of inappropriate use of Federal funds. See id. Awardees are charged with "full responsibility . . .for adherence to the award conditions." Article 2 of the SBIR Phase II Grant General Conditions (October 2004).

Required Reports

12. Payment of the grant amounts for Phase II Awards is conditioned upon the grantee's submission of required reports to NSF and NSF's acceptance of these reports. See Article 6 of the SBIR Phase II Grant General Conditions (October 2004). Awardees are required to submit interim reports on a six-month schedule and to submit a final report. Id. Awardees receive their final payment under NSF awards upon submission and acceptance of a final project report at the end of the project. See Article 7 of the SBIR Phase II Grant General Conditions (October 2004). With this report, awardees must certify that "the work for which payment is hereby requested was performed in accordance with the award terms and conditions and that payment is due." NSF SBIR/STTR Phase II Report Cover Page.

Payments

13. Payments under the grant for Phase II awards are made incrementally with some payment at the beginning of the award, some payment with the acceptance of each satisfactory interim report, and some payment upon acceptance of a satisfactory final report. See Article 7 of the SBIR Phase II Grant General Conditions (October 2004).

Audit and Inspect

14. Pursuant to Article 16(c) of the SBIR Phase II Grant General Conditions (October 2004), grant recipients are required to "make available at [their] office at all reasonable times all books, documents, papers, and records pertinent to [the] award . . . until 3

years after final payment under [the] grant."

Cost Principles

15. Pursuant to NSF regulations, awardees are required to document and justify each line item of the award budgets that they propose to NSF. See NSF Proposal & Award Policies & Procedures Guide, 04-23, Award & Administration Guide, Chapter II.C.2.g.

16. NSF relies on these disclosures to determine the amount of each award, and it sets forth an approved budget, by category of costs, that is a part of the award. NSF 04-604, SBIR Phase I Solicitation FY-2005.

17. Pursuant to the NSF Proposal Guide, NSF 04-23, Chapter V.A., Effective Expiration and Preaward Costs, "[t]he grant period begins on the effective date specified in the award or, in the absence, the date of the award, and runs until the expiration indicated ... [e]xpenditures after the scheduled date of the grant only may be made to honor documented commitments made on or before the expiration date."

## THE DEFENDANTS' CONDUCT

18. Juxtopia made an application and various submissions to the NSF (located in Arlington, Virginia) and received a Phase I grant award for project DMI-0512610, "Intelligent Instruction Systems Using Augmented Reality," totaling $99,824. The grant was effective from July 1, 2005 through December 31, 2006. The grant application was signed by Doswell, as the Authorized Organizational Representative of Juxtopia.

19. On July 31, 2006, Juxtopia applied for a Phase II award for this project with the proposed title: "Intelligent Instruction Systems using Augmented Reality" (hereinafter "Phase II Grant"). This application and various submissions at the time and thereafter described herein were made to NSF in Arlington, Virginia. The application was signed by Doswell, as the

Authorized Organizational Representative of Juxtopia.

Phase II FMSQ

20. On December 30, 2006, as part of the required pre-award financial review, Juxtopia submitted to NSF a Financial Management Systems Questionnaire ("FMSQ") in support of its Phase II Grant Proposal. This FMSQ was signed by Doswell as President.

21. The FMSQ required verification that the applicant, in this case, Juxtopia, maintained the following books of account: a general ledger, project cost ledger, cash disbursements journal, and cash receipts journal. The FMSQ prepared and submitted by Defendants represented that Juxtopia maintained these books of account. Had Juxtopia and Doswell not affirmatively indicated as such, NSF would not have awarded the Phase II Grant.

22. The FMSQ required information that the applicant, in this case, Juxtopia, had an accounting system that provided for the recording of grant/contract costs according to categories of the approved budget. The FMSQ submitted by Defendants represented that Juxtopia's accounting system provided for the recording of grant/contract costs according to categories of the approved budget. Had Juxtopia and Doswell not affirmatively indicated as such, NSF would not have awarded the Phase II Grant.

23. The FMSQ required information that the applicant, in this case, Juxtopia, had an accounting system that identified the receipt and expenditure of funds separately for each grant and contract. The FMSQ submitted by Defendants represented that Juxtopia's accounting system identified the receipt and expenditure of funds separately for each grant or contract. Had Juxtopia and Doswell not affirmatively indicated as such, NSF would not have awarded the Phase II Grant.

24. The FMSQ required that the applicant provide information regarding whether

the Federal grant/contract funds and related expenses could be readily identified if a separate bank account was not maintained. The FMSQ submitted by Defendants represented that a separate bank account was maintained for Federal grant/contract funds. Had Juxtopia and Doswell not affirmatively indicated as such, NSF would not have awarded the Phase II Grant.

25. Under the "Timekeeping System Data" section of the FMSQ, Defendants represented that Juxtopia: (1) maintained time distribution records for each employee, and (2) was "familiar with the time and effort reporting requirements related to Federal awards made to your type of organization." The FMSQ required Juxtopia to attach a sample timesheet, and Juxtopia and Doswell provided a sample timesheet in response to this request.

26. On January 24, 2007, Charles McBride ("McBride"), CPA, from McBride, Lock & Associates notified Doswell that NSF had engaged McBride to perform the financial review of Juxtopia's Phase II Proposal. As part of the review, McBride informed Juxtopia:

> [t]he provided time sheet does not contain all the elements required by NSF program policy. Please modify the time sheet to comply with the requirements set forth at the Cost Analysis and Audit Resolution Branch, NSF website.
>
> I have attached the NSF Sample Time Sheet which you can alternatively state will be used during Phase II performance.

27. In a letter dated January 26, 2007, Doswell responded to the communication and stated: "[f]or the NSF Phase II period of performance, Juxtopia will use the timesheet template that you provided, which abides by the NSF Cost Analysis and Audit Resolution Branch." Had Doswell not agreed to use an acceptable timesheet to record labor associated with the grant, NSF would not have awarded the Phase II Grant to Juxtopia.

Phase II Grant Award, Supplements and Payments

28. On March 6, 2007, NSF sent a grant letter to Doswell awarding Juxtopia $499,973 for STTR Phase II Grant No. IIP-0646587, "Intelligent Instruction Systems Using

Augmented Reality." Juxtopia received an initial payment of $124,993 on March 26, 2007.

29. On February 20, 2008, Juxtopia, by and through Doswell, submitted Interim Report I to NSF for the time period covering 03/2007 – 02/2008. On March 14, 2008, Juxtopia received a payment of $99,995 associated with the approval of this Report and based on the representations therein.

30. On October 1, 2008, Juxtopia, by and through Doswell, submitted Interim Report II to NSF for the time period covering 02/2008 – 10/2008. On November 26, 2008, Juxtopia received a payment of $99,995 associated with the approval of this Report and based on the representations therein.

31. On August 16, 2008, Juxtopia, by and through Doswell, submitted proposal IIP-0851561 to NSF, requesting a $149,999 supplement to the Phase II grant. On May 21, 2009, NSF awarded Juxtopia the $149,083 in supplemental funding, and extended the Phase II grant to February 28, 2011. Juxtopia received a $149,083 payment associated with this supplement on June 3, 2009. In the supplemental proposal, Juxtopia certified and agreed to "comply with NSF award terms and conditions if an award is made". The proposal was signed by Doswell. Had NSF known that this certification was not true and accurate, NSF would not have awarded the supplement or issued the payment.

32. On August 18, 2008, Juxtopia, by and through Doswell, submitted proposal IIP-0851566 to NSF, requesting a $10,000 supplement to the Phase II grant. On November 7, 2008, NSF awarded Juxtopia the supplemental funding, extending the Phase II grant to February 28, 2009. Juxtopia received a $10,000 payment associated with this supplement on February 6, 2009. In the request for supplemental funding, Juxtopia certified and agreed to "comply with NSF award terms and conditions if an award is made". The request was signed

by Doswell. Had NSF known that this certification was not true and accurate, NSF would not have awarded the supplement or issued the payment.

33. On November 1, 2009, Juxtopia, by and through Doswell, submitted proposal IIP-1006210 to NSF, requesting a $16,000 supplement to the Phase II grant. On June 24, 2010, NSF awarded Juxtopia the supplemental funding. Juxtopia received a $16,000 payment associated with this supplement on June 29, 2010. In the supplemental proposal Juxtopia certified and agreed to "comply with NSF award terms and conditions if an award is made". The proposal was signed by Doswell. Had NSF known that this certification was not true and accurate, NSF would not have awarded the supplement or issued the payment. Prior to requesting this supplemental funding, Juxtopia had received $584,061 of Phase II Grant funding.

34. On April 15, 2010, Juxtopia, by and through Doswell, submitted proposal IIP-1038870 to NSF, requesting a $200,000 supplement to the Phase II grant. On June 10, 2010, NSF awarded Juxtopia the supplemental funding, extending the Phase II grant to February 29, 2012. Juxtopia received a $200,000 payment associated with this supplement on June 15, 2010. In the supplemental proposal, Juxtopia certified and agreed to "comply with NSF award terms and conditions if an award is made". The proposal was signed by Doswell. Had NSF known that this certification was not true and accurate, NSF would not have awarded the supplement or issued the payment. Prior to requesting this supplemental funding, Juxtopia had received $584,061 of Phase II Grant funding.

35. On October 17, 2010, Juxtopia, by and through Doswell, submitted proposal IIP-1103362 to NSF, requesting a $40,000 supplement to the Phase II grant. On November 16, 2010, NSF awarded Juxtopia the supplemental funding. Juxtopia received a $40,000 payment

associated with this supplement on November 23, 2010. In the supplemental proposal, Juxtopia certified and agreed to "comply with NSF award terms and conditions if an award is made". The proposal was signed by Doswell. Had NSF known that this certification was not true and accurate, NSF would not have awarded the supplement or issued the payment. At the time Juxtopia requested this supplemental funding, Juxtopia had received $800,061 of Phase II Grant funding, which was more than $300,000 over the original Phase II Grant award.

36. On January 26, 2010, Juxtopia, by and through Doswell, submitted Interim Report III to NSF for the time period covering 10/2008 – 01/2010. In Interim Report III, Juxtopia certified compliance with the award terms and conditions. Specifically, Doswell, on behalf of Juxtopia, certified "that to the best of my knowledge the work for which payment is hereby requested was performed in accordance with the award terms and conditions."

37. On May 27, 2010, Juxtopia, by and through Doswell, submitted Interim Report IV to NSF for the time period covering 01/2010 – 05/2011. In Interim Report IV, Juxtopia certified compliance with the award terms and conditions. Specifically, Doswell, on behalf of Juxtopia, certified "that to the best of my knowledge the work for which payment is hereby requested was performed in accordance with the award terms and conditions."

38. On January 22, 2011, Juxtopia, by and through Doswell, submitted proposal IIP-1125580 to NSF, requesting a $12,000 supplement to the Phase II grant. On February 14, 2011, NSF awarded Juxtopia the supplemental funding. Juxtopia received a $12,000 payment associated with this supplement on February 23, 2011. In the supplemental proposal Juxtopia certified and agreed to "comply with NSF award terms and conditions if an award is made". The proposal was signed by Doswell. Had NSF known that this certification was not true and accurate, NSF would not have awarded the supplement or issued the payment. At the time

Juxtopia requested the supplemental funding, Juxtopia had received $840,061 of Phase II Grant funding, which is more than $300,000 over the original Phase II Grant award.

39. On May 3, 2012, Juxtopia, by and through Doswell, submitted the Final Report to NSF for this project for the time period covering 03/2011 – 02/2012. In the Final Report, Juxtopia certified compliance with the award terms and conditions. Specifically, Doswell, on behalf of Juxtopia, certified "that to the best of my knowledge the work for which payment is hereby requested was performed in accordance with the award terms and conditions." SBIR/STTR Phase II Report Cover Page. Believing Juxtopia's certification to be true and accurate, NSF paid Juxtopia $74,995 on May 17, 2012. Had NSF known that this certification was not true and accurate, NSF would not have issued payment in response to this Final Report. At the time Juxtopia submitted its Final Report, it had received $852,061 of Phase II Grant funding. After Juxtopia received its final payment for the grant after submitting the Final Report, it had received a total of $927,056, which was more than $400,000 over the original grant award.

40. On May 14, 2015, NSF OIG issued NSF OIG Subpoena 2015-0013 to Juxtopia for records relating to the Phase II Grant.

41. A post-award review of the limited books and records provided in response to NSF OIG Subpoena 2015-0013 revealed that Juxtopia failed to comply with the terms and conditions of the Phase II Grant. Specifically, Juxtopia did not maintain the records required under the SBIR Phase II Grant General Conditions (October 2004) and failed to properly maintain the accounting and timekeeping records that Juxtopia certified it would in the FMSQ, including proper time sheets or books of account like a project cost ledger for the entire time period of the grant. Juxopia did produce a ledger for 2010-2012, however, Juxtopia was

required to maintain a ledger for the entire term of the grant.

42. Despite using accountants both before and after the Phase II Grant, Juxtopia did not use any accountant or any controller or finance officer to record expenditures of the Phase II Grant.

43. Juxtopia cannot account for how the Phase II Grant funds were expended, and Juxtopia does not have adequate records to show how the Phase II Grant funds, including its requests for supplemental funding were related to the Phase II Grant purposes.

44. Juxtopia and Doswell were seeking additional Phase II Grant funding over and above the initial grant award while not maintaining the agreed upon and required records to show expenditure of grant funding.

Unallowable Costs Charged To Grant

45. Information subsequently submitted to the United States by Juxtopia reveals that $83,785.75 of costs charged to the grant were incurred after the February 29, 2012 expiration of the grant. An additional $121,852 in costs were incurred in 2012, and Juxtopia does not possess adequate source documentation to demonstrate whether these costs were incurred prior to or after the February 29, 2012 expiration of the grant.

46. Information subsequently submitted to the United States by Juxtopia reveals that $38,308.00 of costs charged to the grant were for meals and entertainment and $821.00 was for bank charges, neither of which are proper or allowable grant costs.

COUNT I
(False Claims Act- 31 U.S.C. § 3729(a)(1)(B))

47. The United States incorporates all paragraphs set forth above as if fully incorporated herein.

48. Juxtopia and Doswell obtained the Phase II Grant award and supplemental

funding through fraudulent inducement in representing that they would comply with the accounting requirements associated with the Phase II Grant. However, Juxtopia and Doswell knowingly did not maintain the records required under the SBIR Phase II Grant General Conditions (October 2004) and knowingly failed to properly maintain the accounting and timekeeping records that Juxtopia certified it would in the FMSQ, including proper time sheets or books of account like a project cost ledger for the entire time period of the grant. The false statements made to obtain the Phase II Grant are false and fraudulent pursuant to 31 U.S.C. § 3729(a)(1)(B). The false and misleading information and representations contained in the grant applications, were material to the decision of NSF to award the Phase II Grant to Juxtopia.

49. Doswell, as the sole owner and signatory on pertinent submissions to NSF, knowingly presented or caused to be presented the false statements.

50. Defendants' actions caused the United States to be damaged in a substantial amount to be determined at trial.

## COUNT II
### False Claims Act – 31 U.S.C. § 3729(a)(1)(A)

51. The United States incorporates all paragraphs set forth above as if fully incorporated herein.

52. Juxtopia and Doswell knowingly submitted claims for payment that were false and fraudulent pursuant to 31 U.S.C. § 3729 (a)(1)(A). Juxtopia and Doswell knowingly certified on interim reports, requests for supplemental funding, and the final report that the work for which payment was being sought was in accordance with the grant terms and conditions, when in fact this certification was not correct. Specifically, Juxtopia and Doswell did not maintain the records required under the SBIR Phase II Grant General Conditions

(October 2004) and failed to properly maintain the required and agreed upon accounting and timekeeping records that Juxtopia and Doswell certified that the company would maintain in the FMSQ, including proper time sheets or books of account like a project cost ledger for the entire time period of the grant.

53. Doswell, as the sole owner and signatory on pertinent submissions to NSF, knowingly presented or caused to be presented the false claims.

54. The false and misleading information and representations contained in those claims, were material to the decision of NSF to make payments to Juxtopia.

55. Defendants' actions caused the United States to be damaged in a substantial amount to be determined at trial.

## COUNT III
(Unjust Enrichment)

56. The United States incorporates all paragraphs set forth above as if fully incorporated herein.

57 The United States, through NSF, paid funds to Juxtopia based upon a false representation of facts. If Juxtopia and Doswell had truthfully disclosed in the proposals, interim reports, requests for supplemental funding, and the final report that the work for which payment was being sought was not done in accordance with the grant terms and conditions, Defendants would not have been entitled to receive the grant funds described above. As a result, Juxtopia received payments from NSF to which it was not entitled. Doswell received and retained the benefit of the Phase II Grant award money directly through salary and compensation and indirectly as the sole owner of Juxtopia.

58. Defendants have been unjustly enriched by retaining the use and enjoyment of the monies paid to them by NSF as a result of their misrepresentations that suggested they were

entitled to receive the NSF grant payments.

59. Defendants have been unjustly enriched by the amount of the NSF grant payments made to them, which they converted to their own use and benefit.

60. Defendants' actions caused the United States to be damaged in a substantial amount to be determined at trial.

## COUNT IV
### (Payment by Mistake)

61. The United States incorporates all paragraphs set forth above as if fully incorporated herein.

62. The United States, through NSF, made payments to Juxtopia based upon the belief that Juxtopia was properly entitled to receive those payments. This belief was based upon representations made by Juxtopia and Doswell that Juxtopia was entitled to receive those payments. Doswell received and retained the benefit of the Phase II Grant award money directly through salary and compensation and indirectly as the sole owner of Juxtopia.

63. The belief that Juxtopia was entitled to these payments was mistaken and erroneous because Juxtopia and Doswell did not comply with the Phase II Grant Award terms and conditions.

64. This mistaken and erroneous belief was material to NSF's decisions to make payments to Juxtopia. NSF would not have made payment to Juxtopia had it been aware that Juxtopia had not been complying with material terms and conditions of the Phase II Grant Award.

65. Because of these payments by mistake, Defendants have received monies to which they are not entitled.

66. Defendants' actions caused the United States to be damaged in a substantial

amount to be determined at trial.

## COUNT V
### (Common Law Fraud)

67. The United States incorporates all paragraphs set forth above as if fully incorporated herein.

68. Juxtopia and Doswell made material misrepresentations of fact to the United States with knowledge of their falsity, or in reckless disregard of their truth, in connection with NSF Award No. IIP-0646587.

69. Juxtopia and Doswell intended that the United States rely upon the accuracy of the false representations referred to above.

70. The United States made substantial payments of money to Juxtopia pursuant to these fraudulent statements, in justifiable reliance on these statements and Juxtopia was not entitled to these payments. Doswell received and retained the benefit of the Phase II Grant award money directly through salary and compensation and indirectly as the sole owner of Juxtopia.

71. Defendants' actions caused the United States to be damaged in a substantial amount to be determined at trial.

THEREFORE, the Plaintiff, the United States of America, respectfully requests this Court to enter judgment for the Plaintiff and against Defendants on each of Counts I, II, III, IV and V of the Complaint as follows:

(a) On Count I, for three times the loss sustained by the United States, plus penalties for each false claim as provided in 31 U.S.C. § 3729(a);

(b) On Count II, for three times the loss sustained by the United States, plus penalties for each false claim as provided in 31 U.S.C. § 3729(a);

(c) On Count III, in an amount to be determined at trial, together with costs and interest;

(d) On Count IV, in an amount to be determined at trial, together with costs and interest;

(e) On Count V, in an amount to be determined at trial, together with costs and interest; and

(f) Awarding such further relief as is just and proper.

PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully submitted,

DANA J. BOENTE
United States Attorney

By: /s/_____
Monika L. Moore
Assistant United States Attorney
Elisabeth Christensen
Special Assistant United States Attorney
Counsel for the United States
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3779
Fax: (703) 299-3983
monika.moore@usdoj.gov